# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT EDWARD PEACOCK,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:04-CV-2265-RDP |
| **CITY OF MOUNTAIN BROOK, et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

**I.  INTRODUCTION**

The court has before it the Motion to Dismiss filed by the City of Trussville; Carolyn Cooper, City Clerk of the City of Trussville; Ms. Kellum, Officer for the City of Trussville; Carl Chamblee, Judge for the City of Trussville; and Shirley Naylor, Magistrate for the City of Trussville (sometimes collectively referred to as the "Trussville Defendants")[1] (Doc. #13) filed on August 30, 2004. Plaintiff filed his Complaint on July 22, 2004. (Doc. #1). Plaintiff filed his opposition to the Trussville Defendants' Motion to Dismiss on September 30, 2004. (Doc. #21). After obtaining a short extension of time, the Trussville Defendants filed their reply on October 15, 2004, and notice of additional authority on December 3, 2004. (Docs. #27, #28).

---

[1] The motion to dismiss Defendants the City of Mountain Brook, Racquel Osborn, Officer for the City of Mountain Brook, and Weil Wrecker Service, Inc. is addressed in a separate memorandum opinion entered contemporaneously with this opinion.

II.   **STATEMENT OF FACTS**[2]

On or about January 27, 2004, Plaintiff was arrested by the City of Trussville for running a red light and having no proof of insurance. (Doc. #27 at Alabama Uniform Traffic Ticket and Complaint). Plaintiff signed two tickets: ticket # 6543776 (charging that Plaintiff ran a red light) and ticket # 6543777 (charging that Plaintiff had no proof of insurance). (*Id.*). A court appearance date of March 24, 2004, at 4:00 p.m. was set by the arresting officer. (*Id.*). The plaintiff failed to appear at the scheduled City of Trussville Municipal Court Docket. (Doc. #27 at Compls. (Warrant Number 04-000000082) (Case Number MC04-82); (Warrant Number 04-000000083) (Case Number MC04-83)).

As a consequence, a Municipal Court Complaint and Warrant of Arrest was issued by Shirley Naylor, the City of Trussville Magistrate. (Doc. #27 at Warrants of Arrest (Warrant Number 04-000000082) (Case Number MC04-0000438); (Warrant Number 04-000000083) (Case Number MC04-0000439)). Thereafter, in a routine traffic stop, the City of Mountain Brook executed the arrest warrant and delivered Plaintiff to the Trussville City Jail, where he remained until a court date of July 6, 2004.

The Honorable Carl Chamblee serves as the City of Trussville Municipal Judge. On July 6, 2004, Plaintiff appeared in open court with the assistance of legal counsel and pled guilty to the two pending failure to appear charges. (Doc. #27 at Case Action Summary for MC04-0000438; Case Action Summary for MC04-0000439). For failure to appear on the no proof of insurance charge,

---

[2]In drafting this statement of facts section, the court has taken judicial notice of the certified records maintained by the City of Trussville Municipal Court concerning the arrest and conviction of Plaintiff, which records were attached collectively to the Trussville Defendants' brief in support of summary judgment.

Plaintiff was sentenced to three days in jail, was simultaneously given three days credit for time already served, and was assessed court costs in the amount of $168.00. (Doc. #27 at Case Action Summary for MC04-0000438). For failure to appear on the running the red light charge, Plaintiff was sentenced to seven days in jail and was simultaneously given seven days credit for time already served. (Doc. #27 at Case Action Summary for MC04-0000439). As for the underlying violations, the failure to have insurance violation was dismissed with court costs of $113.00 and the running the red light guilty plea and adjudication was satisfied through time served. (Doc. #27 at Abstract of Court Record). Thereafter, Plaintiff was released from further custody of the City of Trussville.

Plaintiff filed this suit against the Trussville Defendants, as well as other parties, alleging numerous violations including unlawful arrest, false arrest, and unlawful conviction. The Complaint contains a total of twenty-one counts.[3] (Doc. #1).

### III.    ANALYSIS

####    A.    Collateral Estoppel as to § 1983 Claims

None of the counts asserted against the Trussville Defendants expressly allege violations of the United States Constitution or demand relief against state actors pursuant to 28 U.S.C. § 1983. Nevertheless, it appears that Plaintiff is attempting to state federal civil rights violations against the Trussville Defendants. His federal claims against those Defendants are due to be dismissed under the doctrine of collateral estoppel which operates to bar him from pursuing any § 1983 claims that relate to his arrest on January 27, 2004, for running a red light and his failure to provide proof of insurance or to his convictions for failing to appear in court. This is because the City of Trussville

---

[3]Counts three, four, five, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, and nineteen reference at least one of the Trussville Defendants. Count twenty references all Defendants.

3

Municipal Court's records demonstrate that Plaintiff pled guilty to the failure to appear charges. Accordingly, Plaintiff is collaterally estopped from asserting false or unlawful arrest, unlawful conviction, or other similar claims stemming from his encounter with the Trussville Defendants.

In *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003), a plaintiff, who was charged and convicted of reckless driving, sued the Alabama State Trooper who arrested the motorist. Wood attempted to establish that he had not been speeding at the time of the arrest. However, Wood was previously convicted of driving 62 mph in a 45 mph zone. While noting that Alabama's law on collateral estoppel is somewhat unclear, the Eleventh Circuit nevertheless concluded that Wood was collaterally estopped from re-litigating the fact of his speeding in the § 1983 case against Alabama State Trooper Kesler. *See Wood*, 323 F.3d at 879-80 & n.10. ("Alabama's law on collateral estoppel is somewhat unclear, but under any reading of that law, collateral estoppel applies to preclude Wood, as a party to the prior speeding case, from contending in this case that he was not speeding.")

Of particular significance, the court recognized that a party may be precluded by factual issues decided against it in a previous case, even if the estoppel is raised in the second case by a litigant who was not a party to the first proceeding in which the issue was determined. *Id.* ("Alabama . . . follows an expansive definition of privity, which includes not only a successive interest to the same property right, but also an identity of interest in the subject matter of litigation.") (internal quotations omitted); *see also Marcus v. St. Paul Fire & Marine Ins. Co.*, 651 F.2d 379, 382 n.3 (5th Cir. Unit B July 1981); *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So.2d 158, 165 (Ala. 2001); *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 726 (Ala. 1990).[4]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Here, Plaintiff is a party in this case and was a party in the municipal court criminal action. Although the individual Defendants were not parties in the municipal court, they acted for the City in issuing the arrest warrant, charging Plaintiff, convicting him, and carrying out the municipal court's order of conviction. Therefore, they each share an identity of interest with the City in the subject matter of this litigation and the mutuality requirement is satisfied. *Wood*, 323 F.3d at 880, n.10. It follows that based upon the *Wood* decision, by pleading guilty to the failure to appear charges and by virtue of the consequent adjudication of his guilt[5] that Plaintiff ran the red light, Plaintiff is collaterally estopped from challenging the underlying arrest under § 1983, and all claims relating to false or unlawful arrest are due to be dismissed.

Similarly, under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), if a judgment in favor of the plaintiff in a civil rights case would imply the impropriety of a criminal conviction, or negate an element of that conviction, the plaintiff must first establish conclusively that the criminal conviction has been overturned in order to recover under § 1983. *Heck,* 512 U.S. at 487 (holding that state prisoner's claim for damages is not viable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless prisoner can demonstrate that conviction or sentence was overturned); *see Edwards v. Balisok*, 520 U.S. 641, 643, 648 (1997) (relying upon *Heck* decision and finding that state prisoner's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of decisionmaker that necessarily imply the invalidity of punishment imposed, is not cognizable under § 1983); *cf. Hughes v. Lott*, 350 F.3d 1157, 1160-61 (11th Cir. 2003) (discussing parameters of *Heck v. Humphrey*

---

[5] The certified records from the Trussville Municipal Court indicate that both the "guilty plea" and "adjudication" boxes were checked on the running of the red light charge. (Doc. #27 at Abstract of Court Record)

5

holding and determining that when circumstances surrounding plaintiff's convictions for burglary and receipt of stolen property are undeveloped on record, claim for unreasonable search and seizure is not barred because infancy stage of proceedings means that district court cannot possibly determine that successful § 1983 action necessarily implies invalidation of convictions).

While the exact nature of Plaintiff's constitutional claims against the Trussville Defendants is unclear, at a minimum it is apparent: (1) that Plaintiff's case against them does not involve an illegal search and seizure claim; and (2) that Plaintiff disputes the validity of his criminal convictions, none of which have been overturned. Accordingly, Plaintiff is collaterally estopped from maintaining any § 1983 claims that are premised upon his convictions in the Trussville Municipal Court in light of *Heck* and its progeny.

**B.      Immunity from § 1983 Claims**

Even if Plaintiff's federal claims were not barred by the doctrine of collateral estoppel, those claims must be dismissed because the Trussville Defendants are protected from Plaintiff's federal claims on the basis of immunity. In § 1983 cases, absolute immunity is accorded "to functions 'intimately associated with the judicial phase of the criminal process.'" *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). Even taking the evidence in the light most favorable to Plaintiff, the Trussville Defendants, and in particular the judicial officers, were all performing judicial functions intimately associated with the judicial process. As a result, their actions are cloaked with judicial immunity, and the federal claims against them are due to be dismissed.

Additionally, for those Trussville Defendants who were responsible for various tasks related to the enforcement of the court's orders, the doctrine of quasi-judicial immunity protects them from being required to defend against this litigation. The Eleventh Circuit expanded the scope of the

previously-recognized doctrine of absolute quasi-judicial immunity to cover situations in which personnel were acting pursuant to a judicial order in *Roland v. Phillips*, 19 F.3d 552 (11th Cir. 1994). In *Roland*, the president of a water company filed a civil rights lawsuit against a county sheriff and several deputy sheriffs for their actions responsive to the president's refusal to comply with a judicial order to reconnect a residual water supply. The district court denied the county officials' motion for summary judgment and an interlocutory appeal was taken under the collateral order doctrine. The Eleventh Circuit reversed on the basis of absolute quasi-judicial immunity from § 1983 lawsuit arising from their actions in enforcing a valid judicial order.

The *Roland* court pointed out that absolute quasi-judicial immunity derives from absolute judicial immunity. *See Roland*, 19 F.3d at 555 (citing *Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990)). As explained by the court, non-judicial officials are encompassed by a judge's absolute immunity when their official duties "have an integral relationship with the judicial process." *Roland*, 19 F.3d at 555 (citing *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)). By way of support, the Eleventh Circuit pointed to several other circuits in which absolute quasi-judicial immunity protected law enforcement personnel in context of the executing facially valid judicial orders. *Roland*, 19 F.3d at 555 (*citing Valdez v. Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989) ("Enforcing a court order of judgment is intrinsically associated with a judicial proceeding."); *Coverdell v. Department of Social & Health Servs.*, 834 F.2d 758, 765 (9th Cir. 1987) ("These implementing individuals 'are themselves 'integral parts of the judicial process.''").

The Eleventh Circuit further stated:

The Tenth Circuit explained the rationale for absolute quasi-judicial immunity for
law enforcement officials acting pursuant to court orders:

7

> Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.
>
> . . . .
>
> Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both.... The public interest demands strict adherence to judicial decrees.... Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them.

*Roland*, 19 F.3d at 555-56. (quoting *Valdez*, 878 F.2d at 1288, 1289). The *Roland* court further concluded that quasi-judicial immunity extends to verbal orders of the court as well as to written ones. *Roland*, 19 F.3d at 557. As none of Plaintiff's allegations against the non-judicial officer Trussville Defendants point to actions outside the scope of customary duties and responsibilities in carrying out orders of the Trussville Municipal Court, quasi-judicial immunity protects them from suit, and Plaintiff's federal claims against them are due to be dismissed. *See Scarbrough v. Myles*, 245 F.3d 1299 (11th Cir. 1999) (observing that in § 1983 cases, absolute immunity is accorded "to functions 'intimately associated with the judicial phase of the criminal process.'") (citing *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)).

    **C.    State Law Claims**

As the court has determined that all federal claims against the Trussville Defendants are due to be dismissed, to the extent that Plaintiff has asserted state law causes of action against them, the court, in its discretion, declines to exercise jurisdiction over such counts pursuant to 28 U.S.C. § 1367(c). Accordingly, any state law claims against the Trussville Defendants are due to be dismissed

without prejudice.[6]

## IV.  CONCLUSION

For the reasons discussed above, all federal claims against the Trussville Defendants pursuant to § 1983 are due to be dismissed on the grounds of collateral estoppel and/or judicial or quasi-judicial immunity.  Pursuant to § 1367(c), the court declines to exercise supplemental jurisdiction over any state law claims against the Trussville Defendants; accordingly, those claims are due to be dismissed without prejudice.  The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this    9th    day of May, 2005.

                                                                   **R. DAVID PROCTOR**
                                                                   UNITED STATES DISTRICT JUDGE

---

[6]Plaintiff should consult 28 U.S.C. § 1367(d) which provides that "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."