FILED

2005 May-09  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT EDWARD PEACOCK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:04-CV-2265-RDP** |
| | } | |
| **CITY OF MOUNTAIN BROOK, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

### MEMORANDUM OPINION

### I.    INTRODUCTION

The court has before it Defendant Weil Wrecker Service, Inc.'s ("Weil Wrecker") Motion

for Summary Judgment (Doc. #29) filed on February 25, 2005, and Defendants City of Mountain

Brook and Racquel Osborn's[1] Motion for Summary Judgment (Doc. #34) filed on March 30, 2005.

Plaintiff filed his Complaint on July 22, 2004.  (Doc. #1).  The court entered an Order on March 29,

2005 (Doc. #33), and a subsequent Order on March 31, 2005 (Doc. #37), directing Plaintiff to file

his opposition to the respective summary judgment motions on or before April 29, 2005.  The court

sent these Orders to Plaintiff's last know address; however, both have been returned to the clerk's

office.  Moreover, Plaintiff has not filed any opposition to either motion.

### II.    STATEMENT OF FACTS[2]

At approximately 1:00 a.m. on June 19, 2004, Defendant Officer Racquel Osborn of the

---

[1]According to her affidavit offered in support of summary judgment, the proper spelling of the officer's name is "Racquel Osborn" rather than "Racquel Osborne."  Accordingly, the court uses "Racquel Osborn" throughout this Memorandum Opinion.

[2]In drafting this statement of facts section, the court has relied upon the facts set forth in Doc. #35 that have not been opposed by Plaintiff.  The acronym "AF" stands for admitted fact.

Mountain Brook police department was patrolling Highway 280 traveling in an easterly direction. (AF No. 1).  Near the intersection of Cherokee Road and Highway 280, Defendant Osborn noticed a white mini van ahead of her which did not display a license tag or plate.  (AF No. 2).   The only tag displayed was a dealer advertising tag.  (AF No. 3).  It is standard procedure for Mountain Brook police officers to pull vehicles over which do not display a license tag or plate.  (AF No. 4).  It is a misdemeanor violation of Alabama law if a license tag or plate is not displayed.[3]  (AF No. 5).

Defendant Osborn pulled the vehicle over near the intersection of Highway 280 and Pump House Road.  (AF No. 6).  The driver, Plaintiff Robert Edward Peacock, provided Defendant Osborn with a driver's license.  (AF No. 7).  Defendant Osborn called in the driver's license information to the dispatcher, and was informed there was an outstanding arrest warrant issued by the City of Trussville on Plaintiff for a failure to appear.  (AF No. 8).  Based on the outstanding warrant, Defendant Osborn arrested Plaintiff.  (AF No. 9).

Defendant Osborn asked Plaintiff to step out of the car, patted him down, hand cuffed him and put him in her patrol car.  (AF No. 10).  Defendant Osborn then waited until an officer from the Trussville Police Department arrived.  (AF No. 11).  The Trussville officer then took Plaintiff away.

---

[3]More specifically,  Alabama Code § 32-6-51, relating to license tags and plates provides:

> Every motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in this state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchases his license.

> Anyone violating the provisions of this section shall be guilty of a misdemeanor and shall, upon conviction, be punished by fine not exceeding $500.00 and, in addition thereto, shall be prohibited from driving a motor vehicle in Alabama for a period of not less than sixty days no more than six months.

(AF No. 12).

Plaintiff did not give a clear explanation as to whether he owned the white mini van he was driving. (AF No. 13). Additionally, Defendant Osborn called the vehicle identification number into the Mountain Brook dispatcher and was advised that the vehicle was not registered to Plaintiff. (AF No. 14).   Following standard operating procedure for the Mountain Brook police department, Defendant Osborn then contacted Defendant Weil Wrecker and had the vehicle towed. (AF No. 15).

## III.   ANALYSIS

### A.   Defendants City of Mountain Brook and Racquel Osborn's Motion for Summary Judgment

#### 1.   Federal Claims Against Defendant City of Mountain Brook

Although identified in the pleadings as a party, a review of Plaintiff's Complaint reveals that Plaintiff has not asserted any claims against Defendant City of Mountain Brook.  Instead, Plaintiff asserts claims against Defendant Osborn, who is a police officer for Defendant City of Mountain Brook.  Therefore, Defendant City of Mountain Brook is due to be dismissed.

Even if Plaintiff had asserted a claim under § 1983 against Defendant City of Mountain Brook, that claim would be subject to dismissal.  In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court made clear that, in order to establish municipal liability, a plaintiff must prove, at a minimum:  (1) that the municipality's actions violated the Plaintiff's constitutional rights; and (2) that a "policy" or "custom" of the municipality caused the violation to occur.  *Id*. at 694; *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under § 1983] for the actions of a police officer only when municipal 'official policy' causes a constitutional violation.").  Both of these elements must be

satisfied for *Monell* municipality liability to exist.  Defendant City of Mountain Brook's liability is

necessarily contingent upon the determination of the viability of Plaintiff's claims against Defendant

Osborn.

As discussed below, there is no evidence that a violation of Plaintiff's constitutional rights

took place.  Therefore, there can be no municipal liability on the part of the City of Mountain Brook.

*See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (recognizing that if person suffers no

constitutional injury, then no liability may exist against government body); *Rooney v. Watson*, 101

F.3d 1378, 1381 (11th Cir. 1996), *cert. denied.*, 522 U.S. 966 (recognizing that "an inquiry into a

governmental entity's custom or policy is relevant only when a constitutional deprivation has

occurred"); *Hardin v. Hayes*, 52 F.3d 934, 939 n.8 (11th Cir. 1995) (holding that when underlying

act at issue is not constitutional violation, there is no need to consider whether municipal policy is

deficient).  Accordingly, summary judgment is due to be entered in favor of Defendant City of

Mountain Brook as to any § 1983 claims asserted against it.[4]

### 2. Federal Claims Against Defendant Osborn

#### a. Background

Plaintiff contends that Defendant Osborn violated his constitutional rights under the Fourth,

Fifth, and Fourteenth Amendments of the United States Constitution and/or a denied him due

process of law.  More specifically, Plaintiff complains of three specific actions of Defendant Osborn:

in Count One of the Complaint, Plaintiff contends that he was pulled over by Officer Osborn without

probable cause because "she did not have any idea as to how the [plaintiff] had the vessel in

[4]Nor has Plaintiff presented any evidence that an alleged constitutional deprivation occurred pursuant to an "official" policy of Mountain Brook's.  This failure provides an alternative basis for granting Mountain Brook's motion for summary judgment.

question;" in Count Two of Plaintiff's Complaint, he contends that Officer Osborn allowed

Plaintiff's vehicle to be towed from the scene of the stop even though there was another licensed

driver present who could have taken possession of the vehicle; and finally, in Count Six of the

Complaint, Plaintiff contends he was detained for arrest without Officer Osborn providing him a

copy of the warrants under which he was arrested.  In response to these allegations,  Defendant

Osborn has raised the defense of qualified immunity.

### b.  Qualified Immunity

Qualified immunity is a defense available to police officers as well as other state actors, and

is designed to limit litigation against such persons.  Only those who are "plainly incompetent and

those who knowingly violate the law" can be required to defend against individual liability claims.

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The purpose of qualified immunity is, "to ensure that

before they are subjected to suit, [police] officers are on notice [that] their conduct is unlawful."

*Saucier  v. Katz*, 533 U.S. 194, 206 (2001).  As the Eleventh Circuit has recently stated, "the salient

question ... is whether the state of the law [at the time of the events in question] gave respondents

fair warning that their alleged treatment of [the plaintiff] was unconstitutional."  *Holloman ex rel.*

*Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (quoting *Hope*, 536 U.S. at 741).[5]

---

[5]While in her brief in support of summary judgment, counsel for Defendant Osborn relied upon *Wood v. City of Lakeland*, 203 F.3d 1288 (11th Cir. 2000) and *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994) as cases describing the appropriate standards governing the qualified immunity defense, based upon the more recent decisions in *Hope v. Pelzer*, 536 U.S. 730 (2002), and *Holloman*, these earlier cases no longer accurately represent the full scope of the legal standard this court must apply here.  *See Holloman*, 370 F.3d at 1278 ("To the degree there exists a conflict between *Hope* and our earlier cases, we are, of course, bound to follow the Supreme Court's intervening ruling.") (citing *Lufkin v. McCallum*, 956 F.2d 1104, 1107 (11th Cir.1992)).

Once a defendant has raised the defense of qualified immunity and has shown that her actions were within the scope of her discretionary authority, then the plaintiff has the burden to overcome the defense. More specifically, the Eleventh Circuit recognizes the following two-part analysis for qualified immunity claims:

> 1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
>
> 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983) (other citations omitted). Furthermore, proving that a reasonable public officer would not have believed his actions to be lawful in light of clearly established law requires a showing that the offensive conduct about which the plaintiff complains was clearly established at the time of the purported violation. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

Applying these legal principles to the facts in the light most favorable to Plaintiff, the court concludes that Plaintiff has not offered (and cannot offer) anything to overcome Defendant Osborn's qualified immunity defense. With respect to Defendant Osborn's stop of Plaintiff, the Eleventh Circuit has held that "a police officer may stop a vehicle when there is probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operations of motor vehicles." *United States v. Strickland*, 902 F. 2d 937, 940 (11th Cir. 1990). For example, as recently noted in *United States v. Couch*, No. 03-172-N, 2004 WL 419903, at *2 (M.D. Ala. Feb. 5, 2004), "police officers can constitutionally pull over a vehicle when they

have probable cause to believe that the car is speeding, *see, e.g. Riley v. City of Montgomery*, 104

F.3d 1247, 1252-53 (11th Cir. 1997), probable cause to believe the car ran a stop sign, *see, e.g.,*

*United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999), or probable cause to believe the

vehicle had illegally altered tags or expired tags, *see, e.g., United States v. Long*, 320 F.3d 795, 798

(8th Cir. 2003)." As the court further observed in *Couch*, consideration of other reasons that might

have motivated the police office to pull someone over are irrelevant to the qualified immunity

analysis:

> [A]s long as a police officer has probable cause to believe that a traffic violation has occurred, any other reason the officer might have in his mind for the stop is irrelevant. In the Eleventh Circuit's words, "the constitutional 'reasonableness' of a traffic stop is determined irrespective of 'intent,' either of the individual officer involved or any theoretical 'reasonable officer'. . . . The only question is whether the suspect's behavior gave rise to probable cause sufficient to justify the seizure."

*Id.* at *2 (citations omitted).

The undisputed evidence viewed in the light most favorable to Plaintiff is that Defendant

Osborn's reason for stopping Plaintiff was because the only tag displayed on his vehicle was a dealer

advertising tag, which is contrary to Alabama law. (AF No. 3). Therefore, it is undisputed that

Defendant Osborn had probable cause to stop Plaintiff. Moreover, there is absolutely no evidence

whatsoever that Defendant Osborn violated clearly established law when she permitted Plaintiff's

vehicle to be towed and arrested Plaintiff pursuant to the outstanding warrant issued by the City of

Trussville for Plaintiff's failure to appear in court.[6]  As such, Defendant Osborn is entitled to

summary judgment on her defense of qualified immunity.

---

[6]An alternative driver would not have cured the problem that the car did not have a valid license tag displayed.

### 3.       State Law Claims

As the court has determined that all federal claims against Defendants City of Mountain

Brook and Osborn are due to be dismissed, to the extent that Plaintiff has asserted state law causes

of action against them, the court, in its discretion, declines to exercise jurisdiction over such counts

pursuant to 28 U.S.C. § 1367(c).  Accordingly, any state law claims against these Defendants are due

to be dismissed without prejudice.[7]

### B.       Defendant Weil Wrecker's Motion for Summary Judgment

### 1.       Federal Claims Against Defendant Weil Wrecker

Defendant Weil Wrecker premises its summary judgment motion on the doctrine of absolute

quasi-judicial immunity.  *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (providing that

"absolute quasi-judicial immunity" exists for all non-judicial officials who "have an integral

relationship with the judicial process").  The doctrine of absolute quasi-judicial immunity and the

*Roland* decision are discussed at length in the court's separate memorandum opinion, entered

contemporaneously with this opinion, which explains why summary judgment is also due to be

granted to the Trussville Defendants.  For the reasons stated below, the court concludes that the

doctrine operates here to bar Plaintiff's federal claims against Weil Wrecker.

Assuming that Defendant Weil Wrecker is a state actor within the meaning of § 1983 such

that it may be sued by Plaintiff for purported federal constitutional violations, the court is persuaded

that the Plaintiff's federal claims against Weil Wrecker are integrally related to the judicial process,

---

[7]Plaintiff should consult 28 U.S.C. § 1367(d) which provides that "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

such as towing a car pursuant to the direction of a police officer.  When Officer Osborn arrested

Plaintiff, she did so pursuant to a valid warrant for Plaintiff's arrest.  Weil Wrecker was then

dispatched by the City of Mountain Brook Police Department to tow and impound the van Plaintiff

was driving.  Its only reason for towing the van, and the only reason it has been sued in this case, is

that it complied with the police department's directive.  Weil Wrecker's actions (1) were within the

scope of its customary duties and responsibilities, and (2) took place while it was assisting the City

of Mountain Brook Police Department in carrying out the facially valid orders of the City of

Trussville Municipal Court.  Therefore, any federal claims that Plaintiff has asserted against

Defendant Weil Wrecker are due to be dismissed based on the doctrine of absolute quasi-judicial

immunity.

### 2.    State Law Claims Against Defendant Weil Wrecker

As the court has determined that all federal claims against Defendant Weil Wrecker are due

to be dismissed, to the extent that Plaintiff has asserted state law causes of action against it, the court,

in its discretion, declines to exercise jurisdiction over such counts pursuant to 28 U.S.C. § 1367(c).

Accordingly, any state law claims against Defendant Weil Wrecker are due to be dismissed without

prejudice.

## IV.    CONCLUSION

For the reasons discussed above, all federal claims against Defendants City of Mountain

Brook, Racquel Osborn, and Weil Wrecker are due to be dismissed.  Pursuant to § 1367(c), the court

declines to exercise supplemental jurisdiction over any state law claims against these Defendants;

accordingly, those claims are due to be dismissed without prejudice.  The court will enter an order

consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this _____9th_____ day of May, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE